# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00053-CV

**Appellant, Auto Club County Mutual Insurance Company// Cross-Appellant, Gregory Ginther**

**v.**

**Appellee, Gregory Ginther// Cross-Appellee, Auto Club County Mutual Insurance Company**

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-006450, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

These appeals arise from a dispute over the actual cash value of a totaled car that Gregory Ginther insured with Auto Club County Mutual Insurance (AAA). AAA appeals a summary judgment granted in Ginther's favor in his suit seeking a declaration of the car's actual cash value plus damages for breach of the insurance policy, unfair or deceptive acts in the business of insurance, unfair claim-settlement practices, and failure to promptly pay his claim. Ginther cross-appeals the denial of his requested conditional appellate attorney's fees. We will reverse the trial court's amended final judgment and remand this cause for further proceedings.

## BACKGROUND

Ginther's son wrecked a 2018 Audi S5 Coup Prestige TFSI, losing control of it and crashing into a rock wall at a subdivision's entrance on the night of September 4, 2022,

forty-three days after Ginther purchased that car for $44,500. Ginther submitted a claim to AAA after the crash. The damage was covered by his policy, and AAA declared the car a total loss.

The declarations page of Ginther's policy indicates that he carried comprehensive and collision coverage up to the vehicle's actual cash value, minus a $500 deductible, and coverage for car-rental expense of $50 per day. AAA's adjuster Carla Bell emailed Ginther on September 7, 2022, with a settlement stating the car's actual cash value of $35,184.[1] Bell's email explained that payment would occur after Ginther's release of the car to AAA, described the actions necessary to complete the release process, and stated that September 13 would be the last day for his car rental. Bell attached to her email a computer-generated-valuation report that she had requested from nonparty CCC One Intelligent Solutions, showing how the car's actual cash value was calculated. She referred Ginther to the part of the CCC report listing the vehicle equipment included in the valuation and stated, "[I]f you feel that we have missed something, please advise so that we can update your valuation report."[2]

Instead, Ginther sent a demand letter to AAA on September 23 alleging that the "retail value of the vehicle today [is] $45,225," that AAA outsourced its obligation to reasonably investigate valuation of the loss by relying on the opinion in the CCC report, that AAA knowingly violated the Deceptive Trade Practices Act (DTPA) and chapters 541 and 542 of the Texas Insurance Code, and that he was entitled to $47,500 for property damage, attorney's fees,

---

[1] In addition to the actual cash value, the $36,973.18 settlement total included amounts for tax, unused registration, and title/DMV fee, less Ginther's deductible.

[2] Bell also sent emails to Ginther the next week asking about the car's location and noting that the signed power of attorney had not been received and that his "valuations were being sent to the wrong email address." The record contains no information about those misdirected valuations.

and "still accruing" rental-vehicle expenses. *See* Tex. Civ. Prac. & Rem. Code §§ 17.46, .50(b); Tex. Ins. Code §§ 541.060, 542.054. Ginther did not complete the release process for the amount that AAA offered in settlement of his claim, and AAA did not make any payment to him.

Ginther sued AAA seeking a declaration of his car's actual cash value and damages for breach of contract, and extracontractual causes of action under the DTPA and Insurance Code alleging unfair or deceptive acts in the business of insurance, unfair claim-settlement practices, and failure to promptly pay his claim. After the deadline for designation of experts expired, he filed a hybrid no-evidence and traditional motion for summary judgment on his causes of action. The theme of his summary-judgment motion was that AAA's reliance on the CCC report in making the settlement offer was unreasonable as a matter of law and the report itself constituted no evidence. Neither party presented the trial court with expert testimony on the car's actual cash value, which is a matter requiring specialized knowledge. *See* Tex. R. Evid. 702 (stating that if scientific, technical, or other specialized knowledge will assist trier of fact to understand evidence or determine fact in issue, one qualified as expert by knowledge, skill, experience, training, or education may testify in that regard in form of opinion or otherwise); *Taylor v. Texas Dep't of Protective & Regul. Servs.*, 160 S.W.3d 641, 650 (Tex. App.—Austin 2005, pet. denied) ("To be admissible, expert testimony must be (1) uttered by a qualified expert; (2) relevant; and (3) based on a reliable foundation.").

Ginther's affidavit contended that his car's actual cash value is $43,500. Such lay testimony may be offered via the "property owner rule," which falls under Texas Rule of Evidence 701 and allows an owner's opinion testimony about his property's value—based on the presumption that owners are familiar with their own property and its worth—so long as the owner provides a factual basis for his opinion. *Natural Gas Pipeline Co. of Am. v. Justiss*,

3

397 S.W.3d 150, 157, 159 (Tex. 2012) (citing Tex. R. Evid. 701); *Balderas-Ramirez v. Felder*, 537 S.W.3d 625, 632–33 (Tex. App.—Austin 2017, pet. denied) (noting that market value—"the price a willing buyer would pay" and "the price a willing seller would accept"—of owner's property is subject on which expert testimony was otherwise required). Because Ginther was unaware of how many miles the car had on the date it was wrecked, he estimated its mileage from the average number of miles driven by all drivers in the United States. His valuation relied on his calculation from 2022 data compiled by the U.S. Department of Transportation's Federal Highway Administration showing average miles driven by all U.S. drivers, and his research on the resale prices for similarly equipped Audis according to a J.D. Power Used-Car Guide and a local Audi dealership. Ginther attached to his affidavit documents with the data and research that he used.

On the other hand, AAA contended that the car's actual cash value is $36,883. AAA did not have a sponsoring witness for the CCC report with the car's valuation. Instead, AAA's summary-judgment response noted that under the Texas Administrative Code, the actual cash value of a nonrepairable or salvage motor vehicle is its market value, and an insurance company may determine the market value of such vehicle by any uniformly applied, insurance-industry-recognized procedure:

> The actual cash value of the motor vehicle is the market value of a motor vehicle as determined:
>
> (A) from publications commonly used by the automotive and insurance industries to establish the values of motor vehicles; or
>
> (B) if the entity determining the value is an insurance company, by any other procedure recognized by the insurance industry, including market surveys, that is applied in a uniform manner.

4

43 Tex. Admin. Code § 217.83 (2025) (Tex. Dep't of Transp., Requirement for Nonrepairable or Salvage Vehicle Title or Nonrepairable or Salvage Record of Title).

The trial court convened a hearing during which it denied AAA's motion for continuance to obtain an affidavit from the vice president of operations for "CCC [One] Intelligent Solutions"—someone who had not been disclosed as a person with knowledge of relevant facts—and instead allowed the parties to proceed with summary-judgment arguments. Shortly afterward, the trial court granted summary judgment in Ginther's favor. The day that the summary-judgment order was signed, Ginther moved for leave to file a third amended petition and supplemental summary-judgment motion, both of which he filed contemporaneously with his motion for leave, seeking additional attorney's fees omitted from counsel's affidavit. AAA appealed the summary-judgment order.[3]

One month after signing the summary-judgment order, the trial court granted Ginther leave to file his third amended petition and supplemental summary-judgment motion. That same day, the trial court signed an amended final judgment

- declaring that the car's actual cash value on September 7, 2022, was $43,500 and that AAA's failure to pay any amount for the claim breached the policy, and

- ordering AAA to pay Ginther economic damages of $47,713.93; treble damages of $143,138.79; 18% interest as damages ($23.53/day) from September 7, 2022, until the date of the judgment, attorney's fees of $40,000, and costs of the suit, but

- denying Ginther's request for conditional appellate attorney's fees of $50,000.

---

[3] Although AAA filed a premature appeal from this order that was not final because it did not dispose of Ginther's claim for attorney's fees, we treat the notice of appeal as filed on the day of the amended final judgment that included an attorney's fees award. *See* Tex. R. App. P. 27.1(a) ("In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal."), .2. ("The appellate court may treat actions taken before an appealable order is signed as relating to an appeal of that order and give them effect as if they had been taken after the order was signed.").

AAA challenges those trial-court rulings in this appeal, along with the grant of leave to Ginther and the denial of AAA's motion for continuance. Ginther cross-appeals the denial of his requested conditional appellate attorney's fees.

## DISCUSSION

AAA's appeal challenges (1) the grant of summary judgment in Ginther's favor on all issues and entry of the amended final judgment awarding him economic damages, statutory exemplary damages, penalty interest, and attorney's fees as a matter of law; (2) the rejection of the genuine issues of fact concerning the car's actual cash value on the September 4 date of loss, whether AAA committed any DTPA or Insurance Code violations, and if it did, whether it did so knowingly; (3) the grant of Ginther's request for leave to file his claim for additional attorney's fees and to present a new summary judgment in support of that claim, which occurred weeks after the court heard the summary-judgment motion and signed a written order granting it and moments before signing the amended final judgment; and (4) the denial of AAA's motion for continuance of the summary-judgment hearing. Ginther's cross-appeal contends that he established, as a matter of law, his entitlement to conditional appellate attorney's fees that the trial court denied.

We review a grant of summary judgment de novo. *Keenan v. Robin*, 709 S.W.3d 595, 600 (Tex. 2024). When a party files a hybrid motion seeking traditional and no-evidence summary judgment, we first consider the no-evidence grounds. *Id.*

### No-evidence summary judgment

Ginther sought summary judgment on all his claims against AAA on no-evidence grounds. Texas Rule of Civil Procedure 166a(i) authorizes a party to move for summary

6

judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which *an adverse party* would have the burden of proof at trial. Tex. R. Civ. P. 166a(i).[4] However, a party may not properly move for no-evidence summary judgment on its *own claim* or affirmative defense for which it has the burden of proof. *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 679 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *accord Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 187 n.6 (Tex. 2022) ("If a party has the burden of proof on claims or defenses, however, it cannot use a no-evidence motion to establish those claims or defenses"). Permitting a party to file a no-evidence motion on their own cause of action would allow them to prevail without ever proving the elements of their cause of action. *Id.* Thus, when a movant files a no-evidence motion for summary judgment on a claim or affirmative defense for which it has the burden of proof, the nonmovant need not respond to that improper no-evidence motion because it should never have been filed. *Id.*; *see Waite v. Woodard, Hall & Primm, P.C.*, 137 S.W.3d 277, 280 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (concluding that party's no-evidence motion for summary judgment on its breach-of-contract claim was improper because party itself had burden of proof on that claim).

Ginther's no-evidence motion for summary judgment on his own causes of action against AAA, for which he has the burden of proof, was improper. To the extent that the trial

---

[4] The Texas Supreme Court recently amended Texas Rule of Civil Procedure 166a, but "[o]ther than the deadline changes, Rule 166a's rewrite is not intended to substantively change the law." Tex. R. Civ. P. 166a (cmt. to 2026 change). The amendments renumbered the rule's provisions. *See* Supreme Court of Tex., Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). But because the amendments apply only to summary-judgment motions filed on or after March 1, 2026, and the filing of Ginther's summary-judgment motion preceded the amendments, we refer to the provisions of Rule 166a in effect at the time. *See id.*

court granted Ginther's no-evidence motion for summary judgment, it erred. We sustain this part of AAA's first issue and proceed to review the traditional summary judgment.

**Traditional summary judgment**

The movant for traditional summary judgment under Texas Rule of Civil Procedure 166a(c) must show that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." *Amedisys, Inc. v. Kingwood Home Health Care*, *LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (quoting Tex. R. Civ. P. 166a(c)). If the movant carries its summary-judgment burden, then the burden shifts to the nonmovant to disprove or raise an issue of fact as to at least one of those elements. *Id.* But if the movant fails to satisfy its initial burden, the burden does not shift, and the nonmovant need not respond or present any evidence. *Id.* This is because summary-judgment motions must stand on their own merits. *Id.* Unless and until the movant conclusively establishes its cause of action or defense as a matter of law, the nonmovant has no burden to respond. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022). Our summary-judgment review takes as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* at 509.

**Breach-of-contract claim**

Insurance policies are contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). A party asserting a breach-of-contract claim has the burden of proving four elements: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex.

2018).  Ginther's breach-of-contract claim alleged that AAA failed to pay him any amount under the policy, including the settlement offer, and that AAA failed to perform a reasonable investigation into the value of the car before offering the settlement to him based on the value in the CCC report.[5]

A plaintiff seeking recovery under an insurance policy must prove the provisions that allow recovery.  *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999).  As our sister court noted,

> in actions on an insurance contract, the contract (or any relevant provision of the contract) is almost always made a part of the record, which accords with the truism that one cannot determine the character of an insurance policy or whether the insurance contract has been breached without considering the policy's terms.

*State Farm Mut. Auto. Ins. Co. v. Smith*, No. 2-07-004-CV, 2007 WL 2012835, at \*2 (Tex. App.—Fort Worth July 12, 2007, no pet.) (mem. op.) ("We cannot say from the record whether the relevant portions of the insurance policy were proved at trial.").  Here, neither the contract nor its relevant provisions are in the record.  Ginther's summary-judgment motion included only pages with declarations and a consumer bill of rights.  The consumer bill of rights states in bold

---

[5] The breach-of-contract claim in the second amended petition, the live pleading at the time of the summary-judgment hearing, alleged that (1) "AAA failed to perform its duties under the Policy to pay Ginther any amount under the Policy including the amount of money it offered to pay Ginther for the Vehicle" and (2) "AAA failed to perform a reasonable investigation into the value of the vehicle before offering Ginther to compromise the claim for the value in the CCC One report minus the deductible."  After the trial court granted Ginther leave to file a third amended petition, he made only these underlined additions to his breach-of-contract allegations: (1) "AAA failed to perform its duties under the Policy to pay Ginther any amount under the Policy including the $36,833 it offered to pay Ginther for the Vehicle on September 7, 2022" and (2) "AAA failed to perform a reasonable investigation into the value of the vehicle before offering Ginther to compromise the claim for the value in the CCC One report minus the deductible.  AAA relied, admittedly, on a computer-generated report with no sponsoring witness to establish the ACV of the Vehicle."

type that it "is not [p]art of your policy." And Ginther's declarations page is insufficient to establish the essential elements of his breach-of-contract claim because it lacks the substantive terms and conditions that govern when AAA must pay for a total loss. *See* "Declarations page," https://www.tdi.texas.gov/consumer/home-insurance-glossary.html (last visited Mar. 23, 2026) (defining declarations page as "page in a policy that shows the name and address of the insurer, the period of time a policy is in force, the amount of the premium, and the amount of coverage").

Thus, the policy's provisions specifying AAA's contractual obligations for damage to or loss of the car and car-rental reimbursement—which are the core of all Ginther's claims against AAA—are unknown and unproven.[6] Considering the declarations page in isolation from those specific policy provisions ignores the well-established rule that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (quoting *Guardian Tr. Co. v. Bauereisen*, 121 S.W.2d 579, 583 (1938)). The policy's provisions on total-loss calculations are particularly important to this valuation dispute:

> Because total loss calculations involve insurance policies and their interpretations, the specific language in clauses governing these calculations will be paramount in litigating such claims. Contract-related issues include a loss in market value less applicable deductible amounts, use of guidebooks, projected sold adjustments, inclusion of fees, application to leased or owned vehicles, statutory methods of calculation, applicability to loan deficiencies, and compliance with regulatory requirements.

190 Am. Jur. Trials § 105 (2025).

---

[6] Nor can we determine what Ginther's contractual obligations may have been when AAA's payment or settlement of his claim, or updates to the valuation report, required some action or cooperation on his part. *See* Tex. Ins. Code § 542.056(b) (noting that when payment of all or part of claim is conditioned on performance of act by claimant, insurer's time for payment begins running after date that claimant's act is performed).

On this record, we conclude that Ginther failed to meet his summary-judgment burden of conclusively establishing his breach-of-contract cause of action as a matter of law. Thus, the trial court erred by granting summary judgment in Ginther's favor on his breach-of-contract claim, declaring that AAA breached the policy, and ordering AAA to pay him economic damages of $47,913.93. We sustain this part of AAA's first issue.

**Extracontractual claims**

Our conclusion that Ginther failed to conclusively establish his breach-of-contract cause of action as a matter of law also affects his extracontractual claims. As noted, besides his breach-of-contract claim and request for declaratory relief, Ginther sought damages for extracontractual causes of action against AAA. These included knowing violations of the DTPA and violations of the Insurance Code for unfair or deceptive acts in the business of insurance, unfair claim-settlement practices, and failure to promptly pay his claim. *See* Tex. Civ. Prac. & Rem. Code §§ 17.46, .50(b); Tex. Ins. Code §§ 541.060, 542.054.

However, Ginther has not met his burden of conclusively proving that any damages he sought on these extracontractual claims are independent of the contract damages he sought. The Texas Supreme Court has stated that "[a]n insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *Menchaca*, 545 S.W.3d at 500. This independent-injury rule has two aspects: first, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. *Id.* at 499. Second, an insured can recover actual damages caused by the insurer's bad-faith conduct if

11

the damages "are separate from and differ from benefits under the contract." *Id.* at 500. The Court noted, "a successful independent-injury claim would be rare, and we in fact have yet to encounter one." *Id.* Here, although Ginther pleaded that he would seek damages for "mental anguish," he provided nothing in the summary-judgment record to support that claim. On this record, we conclude that Ginther failed to meet his summary-judgment burden of conclusively establishing, as a matter of law, that AAA's conduct in handling his claim caused any injury independent of the denial of the policy's benefits.

Because there is no basis in the record for any award of contractual, extracontractual, and punitive damages, the trial court erred by granting summary judgment in Ginther's favor on his extracontractual claims and by ordering AAA to pay him treble damages of $143,138.79; 18% interest as damages ($23.53/day) from September 7, 2022, until the date of the judgment; plus attorney's fees of $40,000 and costs of the suit that were requested in connection with his declaratory-judgment action, breach-of-contract claim, and insurance-code claims. We sustain this final portion of AAA's first issue.[7]

---

[7] Because we have sustained AAA's appellate issues challenging the trial court's grant of summary judgment in favor of Ginther, we need not reach AAA's remaining appellate issues contending that factual issues precluded summary judgment, that the trial court abused its discretion by granting Ginther's requested leave to file his amended petition and supplemental motion for summary judgment, and that the trial court abused its discretion by denying AAA's motion for continuance of the summary-judgment hearing. *See* Tex. R. App. P. 47.1. Likewise, we need not reach Ginther's issue on cross-appeal challenging the denial of his conditional appellate attorney's fees. *See id.*; *City of San Antonio v. Texas Att'y Gen.*, 851 S.W.2d 946, 952 (Tex. App.—Austin 1993, writ denied) ("We need not decide the appellees' cross appeal: It is sufficient that we must reverse the summary judgment on the ground raised in the City's appeal.").

**CONCLUSION**

We reverse the trial court's amended final judgment and remand this cause for further proceedings consistent with this opinion.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Reversed and Remanded

Filed:   March 26, 2026